UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JIJO VARGHESE**, <br><br> Plaintiff, <br><br> v. <br><br> **ANTONY BLINKEN, et al.**, <br><br> Defendants. | Case No. 21-cv-2597 (CRC) |

### MEMORANDUM OPINION

Plaintiff Jijo Varghese, a lawful permanent resident of the United States, seeks to compel the Department of State to adjudicate his wife's U.S. visa application. Varghese filed a visa petition on his wife's behalf four years ago. The government moved to dismiss this suit for lack of subject matter jurisdiction and failure to state a claim. Varghese opposed dismissal and moved for summary judgment on his claims. Because Varghese has not plausibly alleged that the delay of his wife's visa application is unreasonable, the Court will grant the government's motion to dismiss the case and deny Varghese's summary judgment motion.

**I.  Background**

Mr. Varghese is a lawful permanent resident of the United States who lives in Georgia. See Compl. ¶ 5; Varghese Decl. ¶¶ 2–3, ECF No. 6-1. His wife, Neethu Sara George, lives in India. Varghese Decl. ¶¶ 4, 9.

In July 2018, Varghese filed a visa petition on George's behalf. Compl. ¶¶ 1, 13. U.S. Citizenship and Immigration Services ("USCIS") approved the petition in October 2019. Id. ¶ 13. On December 9 of that year, Varghese received confirmation that the Department of State had assigned a number to George's application. Varghese Decl. ¶ 5. The application remains pending. Indeed, Varghese and George did not receive an update on its status until December 8,

2021—several months after the filing of this suit. Id. ¶ 8. In an email, the State Department's National Visa Center ("NVC") notified the couple that George's immigration case had been "documentarily complete" since January 25, 2021. Id.; Pl.'s Ex. B (NVC email), ECF No. 6-3. Once an application is documentarily complete, the NVC coordinates with the appropriate U.S. Embassy or Consulate—in this case, in Mumbai[1]—to schedule an applicant interview. See *Immigrant Visa Process, Step 9: Submit Documents*, U.S. Dep't of State, Bureau of Consular Affs., https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-8-scan-collected-documents/step-9-upload-and-submit-scanned-documents.html (last visited July 29, 2022).[2] Varghese alleges that, since receiving that notice, he and George have repeatedly inquired about George's visa application and "received no meaningful responses . . . [or] status updates." Mem. in Opp'n to Defs.' Mot. Dismiss & in Supp. of Pl.'s Mot. Summ. J. ("Opp'n") at 5, ECF No. 6; see also Varghese Decl. ¶ 7. As of July 29, 2022, the State Department's website indicated that George's visa was "ready" for an interview.

In October 2021, Varghese brought suit against several government officials under the Administrative Procedure Act's ("APA") unreasonable delay provision, 5 U.S.C. § 706(1), and the Mandamus Act, 28 U.S.C. § 1361. Compl. ¶¶ 6–11, 13–33. Varghese asks the Court to compel the government to adjudicate his wife's visa application under either Act. Id. ¶ 33. The government moved to dismiss the complaint for lack of subject matter jurisdiction under Federal

---

[1] The prefix to George's visa application number indicates that her application is ultimately headed for processing at the consulate in Mumbai, India.

[2] The Court may take judicial notice of this and other information posted on official government websites. See Giliana v. Blinken, —F. Supp. 3d—, 2022 WL 910338, at *4 n.2 (D.D.C. Mar. 29, 2022) (Cooper, J.); Pharm. Rsch. & Mfrs. of Am. v. U.S. Dep't of Health & Hum. Servs., 43 F. Supp. 3d 28, 33–34 (D.D.C. 2014).

Rule of Civil Procedure 12(b)(1) and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Varghese has opposed the government's dismissal effort and moved for summary judgment. Those motions are ripe for the Court's review.

## II. Legal Standards

When evaluating a 12(b)(1) or 12(b)(6) motion to dismiss, the court "must treat the complaint's factual allegations as true, and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (cleaned up); see also Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011). However, the Court need not accept the plaintiff's "legal conclusions or inferences that are unsupported by the facts alleged." Ralls Corp. v. Comm. on Foreign Inv. in the U.S., 758 F.3d 296, 315 (D.C. Cir. 2014) (examining 12(b)(6) motion); see Food & Water Watch, Inc. v. Vilsack, 808 F.3d 905, 913 (D.C. Cir. 2015) (examining 12(b)(1) motion).

On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." Tex. Child.'s Hosp. v. Azar, 315 F. Supp. 3d 322, 329 (D.D.C. 2018) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992)). In making this determination, the court "is not limited to" considering only "the allegations of the complaint," but "may consider such materials outside the pleadings as it deems appropriate." Transp. Trades Dep't, AFL-CIO v. Nat'l Mediation Bd., 530 F. Supp. 3d 64, 69 (D.D.C. 2021) (citations omitted); see also Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992).

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks

omitted). When ruling on a 12(b)(6) motion, a court may consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." Daniels v. United States, 947 F. Supp. 2d 11, 17 (D.D.C. 2013).

Because the Court will grant the government's motion to dismiss, it need not address the summary judgment standard.

### III. Analysis

The Court will first address the issue of plaintiff's standing to bring suit against certain parties in this case. It will then turn to the merits of plaintiff's unreasonable delay claim.[3]

A. <u>Claims Against the Attorney General and FBI Director</u>

The government first seeks dismissal of certain government officials on the ground that they "cannot provide the relief requested." Mot. Dismiss at 5, ECF No. 5 (cleaned up). The Court agrees that United States Attorney General Merrick Garland and Federal Bureau of Investigation ("FBI") Director Christopher Wray must be dismissed because the Court lacks jurisdiction over the claims against them.

---

[3] Varghese also contends that the government did not comply with Local Civil Rule 7(n)(1), Opp'n at 11, which provides that "[i]n cases involving the judicial review of administrative agency actions, unless otherwise ordered by the Court, the agency must file a certified list of the contents of the administrative record with the Court within 30 days following service of the answer to the complaint or simultaneously with the filing of a dispositive motion." The government maintains that the rule does not apply because this case concerns "agency inaction, not agency action." Reply at 10, ECF No. 9. The Court agrees with the government. Because the agency here allegedly "fail[ed] to act, there is no 'administrative record' for a federal court to review." Nat'l Law Ctr. on Homelessness & Poverty v. Dep't of Veterans Affs., 842 F. Supp. 2d 127, 130 (D.D.C. 2012) (internal quotation marks omitted). The question in this case is whether Varghese has stated a plausible claim based on the facts alleged; thus, any administrative record would not help resolve the government's motion.

4

The Court reads the government's argument on this point to go to Varghese's standing to bring suit, which is an essential element of this Court's jurisdiction.[4]  See Lujan, 504 U.S. at 560. "To demonstrate standing under Article III of the Constitution, [Varghese] must show an injury in fact caused by the [relevant] defendant and redressable by judicial relief." Stilwell v. Off. of Thrift Supervision, 569 F.3d 514, 518 (D.C. Cir. 2009).  Varghese does not have standing to sue either the Attorney General or the FBI Director because he cannot establish any injury that is fairly traceable to those defendants' acts and redressable by relief against them.

Varghese contends that Attorney General Garland has caused him injury "because his duties include ensuring compliance with all applicable federal laws, including the APA." Opp'n at 10.  This duty, however, is too general and too far removed from the State Department's processing of individual visa applications to have caused Varghese's claimed injury.  See Lujan, 504 U.S. at 560 (injury must be "fairly . . . trace[able] to the" defendant's acts).  Varghese's bid for standing to sue the FBI Director rests on his allegation that the FBI "is responsible for running all . . . visa applicants through its various security and background check programs." Compl. ¶ 9.  Varghese "*suspect*s that the delay" in processing George's visa application "*may* be attributed to a failure to process a security check." Id. (emphasis added).  Again, this admittedly speculative allegation does not establish a sufficient causal link between the FBI Director and the delay at the center of this case.  See Lujan, 504 U.S. at 560.  Because he has not sufficiently alleged that either defendant has had any role in processing George's visa application or that his

---

[4] Varghese, by contrast, reads the government's motion to center at least in part on mootness, and argues that "court[s] ha[ve] found a visa case is *not moot* until it has been finally adjudicated." Opp'n at 10.  Because the Court interprets the government's argument to go instead to standing to sue these specific officials, it need not address the plaintiff's general mootness discussion.

injuries can be traced to them, Varghese does not have standing to sue these defendants. See Tekle v. Blinken, No. 21-cv-1655, 2022 WL 1288437, at *2 (D.D.C. Apr. 29, 2022) (reaching same conclusion as to DOJ and FBI officials named in immigration-delay case). Accordingly, the Court dismisses the Attorney General and FBI Director from this case.[5]

    B.  Unreasonable Delay

The Court moves to Varghese's claim that the government's delay in processing his wife's visa application violates the APA and Mandamus Act. The APA "imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time.'" Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1099 (D.C. Cir. 2003) (quoting 5 U.S.C. § 555(b)). The APA also "authorizes a reviewing court to 'compel agency action unlawfully withheld or unreasonably delayed.'" Id. (quoting 5 U.S.C. § 706(1)). In reviewing agency inaction, such as visa processing delays, courts use the same standard under both the APA and the Mandamus Act. Skalka v. Kelly, 246 F. Supp. 3d 147, 152 (D.D.C. 2017). Thus, the Court will analyze the unreasonable delay claims together.

To determine whether a delay requires judicial intervention, courts in this district use the factors developed in Telecommunications Research & Action Center v. FCC ("TRAC"), 750 F.2d 70, 79–80 (D.C. Cir. 1984). In analyzing a motion to dismiss, courts apply the TRAC factors not to "determin[e] whether there has been an unreasonable delay," but to determine if a

---

[5] Alternatively, the Court would dismiss the claims against the Attorney General and FBI Director under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. See Iqbal, 556 U.S. at 678 (requiring plaintiff to "plead[] factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Varghese has not "alleged sufficient facts to show officials from the [DOJ] or FBI had any hand in causing the complained-of delay" in visa processing. Arab v. Blinken, —F. Supp. 3d—, 2022 WL 1184551, at *5 n.5 (D.D.C. Apr. 21, 2022).

plaintiff's complaint "alleged facts sufficient to state a plausible claim for unreasonable administrative delay." Jingjing Liu v. Mayorkas, No. 20-cv-654, 2021 WL 2115209, at *3 (D.D.C. May 25, 2021) (Cooper, J.). There are six TRAC factors:

> (1) the time agencies take to make decisions must be governed by a "rule of reason";
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

TRAC, 750 F.2d at 80 (cleaned up).

These factors create four basic inquiries: First, factors one and two examine if there is "any rhyme or reason—congressionally prescribed or otherwise—for [the government]'s delay" in processing the visa application. Ctr. for Sci. in the Pub. Int. v. FDA, 74 F. Supp. 3d 295, 300 (D.D.C. 2014). Second, factors three and five consider "the consequences of delay if the Court does not compel the [government] to act." Id. Third, factor four looks at how "forcing the agency to act" could "thwart its ability to address other priorities." Id. Fourth, factor six accounts for any claim that the agency has acted in bad faith. See Hulli v. Mayorkas, 549 F. Supp. 3d 95, 103 (D.D.C. 2021) (Cooper, J.). Ultimately, determining if a delay is unreasonable is a fact-based inquiry that "cannot be decided in the abstract." Bagherian v. Pompeo, 442 F.

7

Supp. 3d 87, 94 (D.D.C. 2020) (quoting Mashpee, 336 F.3d at 1102). Applying the TRAC factors here, the Court finds that Varghese has not stated a plausible claim of unreasonable delay.

    *1. TRAC Factors One and Two*

The Court will start by analyzing factors one and two together to determine "whether the agency's response time complies with an existing specified schedule" set by Congress "and whether [the response time] is governed by an identifiable rationale." Ctr. for Sci., 74 F. Supp. 3d at 300; see TRAC, 750 F.2d at 80. Taken together, these factors favor the government.

To begin, the delay alleged here has not stretched to a length courts find unreasonable. "[D]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." Didban v. Pompeo, 435 F. Supp. 3d 168, 176 (D.D.C. 2020) (Cooper, J.). Similar visa processing delay cases calculate the delay "from the last Government action to the issuance of the opinion." Mahmood v. U.S. Dep't of Homeland Sec., No. 21-cv-1262, 2021 WL 5998385, at *6 (D.D.C. Dec. 20, 2021) (internal quotation marks omitted). Based on the Court's review of the State Department's visa-status website, the Department took action on George's application within the past month—marking it "ready" for an interview on July 27, 2022. See *Visa Status Check*, U.S. Dep't of State, Consular Elec. Application Ctr., https://ceac.state.gov/CEACStatTracker/ Status.aspx (check for George's application number on July 27, 2022). To be sure, George's application apparently remained at the NVC for some 18 months before that, after being marked as documentarily complete on January 25, 2021. While the Court does not wish to minimize the burden this delay caused Varghese and George, other courts have found such a delay is not unreasonable as a matter of law. See, e.g., Mahmood, 2021 WL 5998385, at *7–8 (finding a 25-month delay on a visa application not unreasonable). And even if the Court considers the longest

possible timeline—from when the petition was filed in July 2018 to the issuance of this Court's opinion—the delay amounts to around four years. While a delay of that length does "plausibly stretch[] the boundaries of reasonableness," Giliana v. Blinken, —F. Supp. 3d—, 2022 WL 910338, at *5 (D.D.C. Mar. 29, 2022) (Cooper, J.), it still would not warrant judicial intervention, standing alone.

And that delay does not stand alone. The D.C. Circuit has instructed that the first TRAC factor "cannot be decided in the abstract, by reference to some number of months or years beyond which agency action is presumed to be unlawful, but will depend" on, among other things, "the resources available to the agency" during the delay. Mashpee, 336 F.3d at 1102. Here, as in many similar cases in this district, the Court credits the government's representations that the COVID-19 pandemic has greatly reduced the resources available to the State Department for processing visas. See, e.g., Dastagir v. Blinken, 557 F. Supp. 3d 160, 166 (D.D.C. 2021) ("Issues like a pandemic . . . are out of the control of the Government and are justifications for delay that the Court is ill-equipped to second guess."); Xiaobing Liu v. Blinken, 544 F. Supp. 3d 1, 11 (D.D.C. 2021) ("Defendants have shown such an identifiable rationale in how they have adjusted visa processing during the COVID-19 pandemic."). The pandemic thus forms part of a "rule of reason"—an identifiable and justifiable rationale—that accounts for the agency's inaction. Ctr. for Sci., 74 F. Supp. 3d at 300.

The impact of COVID-19 on State Department operations accounts for a substantial portion of the delay in this case. Starting in March 2020, the Department generally suspended visa services at all U.S. embassies and consulates for four months. See Dastagir, 557 F. Supp. 3d at 163 (citation omitted). In July 2020, it declared that "[e]mbassies and consulates" could "enter a phased resumption of visa services . . . as local conditions and resources allow[ed]."

9

*Suspension of Routine Visa Services*, U.S. Dep't of State, Bureau of Consular Affs. (July 22, 2020), https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/visas-news-archive/suspension-of-routine-visa-services.html.  Still, this phased reopening was merely an authorization, rather than a directive, to begin offering visa services again.  And consular posts have continued to face challenges over the last two years.  As relevant here, the U.S. Embassy and consulates in India have reported "reduced staffing and numerous pandemic-related disruptions to [their] operations since March 2020."  *Visas*, U.S. Dep't of State, U.S. Embassies & Consulates in India, https://in.usembassy.gov/visas/ (last visited July 29, 2022).  The U.S. Consulate in Mumbai only fully reopened Immigrant Visa appointments of all types on June 7, 2021.  *Immigrant Visas*, U.S. Dep't of State, U.S. Embassy & Consulates in India, https://in.usembassy.gov/visas/immigrant-visas/ (last visited July 29, 2022).

Unsurprisingly, these capacity constraints have led to significant backlogs—both in India and around the world.  When it resumed full services a year ago, the U.S. Consulate in Mumbai began by rescheduling applicants whose appointments were canceled due to COVID surges in the springs of 2020 and 2021.  Id.  And globally, as of July 2022, the number of eligible immigrant visa applicants whose cases are documentarily complete at the NVC but are still waiting for an interview—like George—totaled 409,645.  *National Visa Center (NVC) Immigrant Visa Backlog Report*, U.S. Dep't of State, Bureau of Consular Affs., https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/visas-backlog.html (last visited July 29, 2022).  This backlog suggests that "the pandemic continues to severely impact the number of visas . . . embassies and consulates abroad are able to process."  Id.  The pandemic, and its effect on visa processing services in India, thus amounts to an identifiable rationale to justify the delay here.

Seeking to avoid this outcome, Varghese asserts that "[i]t is the sense of Congress that the processing of any immigration benefit application should be completed not later than 180 days after the initial filing of the application." See Opp'n at 13 (quoting 8 U.S.C. § 1571(b)). Because the delay here exceeds 180 days, Varghese argues that 8 U.S.C. § 1571(b) "tips the scales" of at least the second TRAC factor in his favor. Opp'n at 13. As even Varghese recognizes, id., Congress intended for 180 days to be an "aspirational" timeline, "rather than mandatory" deadline. Shen v. Pompeo, No. 20-cv-1263, 2021 WL 1246025, at *8 (D.D.C. Mar. 24, 2021); see Emergency Coal. to Defend Educ. Travel v. U.S. Dep't of the Treasury, 545 F.3d 4, 14 n.6 (D.C. Cir. 2008) ("[A] sense of Congress resolution is not law."). Still, the second TRAC factor examines whether Congress provided any "*indication* of the speed with which it expects" the State Department to proceed, not whether there is exact deadline for visa processing. Hulli, 549 F. Supp. 3d at 101. Thus, the 180-day non-mandatory, aspirational deadline "nudges the second factor" in support of Varghese, "but only slightly." Giliana, 2022 WL 910338, at *5.

Considering all the relevant circumstances and facts presented by both sides, the Court finds the first two factors collectively tip in favor of the government.

    2. *TRAC Factor Four*

The fourth factor decidedly favors the government because expedited action on George's application would "put[] [her] at the head of the queue," effectively "mov[ing] all others back one space and produc[ing] no net gain." In re Barr Lab'ys, Inc., 930 F.2d 72, 75 (D.C. Cir. 1991). Although Varghese argues that he is not asking for George "to be put ahead in line of others," Opp'n at 13–14, he has not provided sufficient facts showing that the Court "granting relief would do anything more than expedite [George's] case at the expense of similarly waiting

11

applicants." Mahmood, 2021 WL 5998385, at *8. As a practical matter, if George were granted priority over other applicants waiting for visa appointments, the Court would be "'impos[ing] offsetting burdens on equally worthy' applicants." Didban, 435 F. Supp. 3d at 176 (quoting In re Barr Lab'ys, Inc., 930 F.2d at 73).

Varghese offers two reasons why factor four weighs in his favor: first, the government has not proven the existence of a queue; and second, he and his wife "should not be penalized for lack of agency resources." Opp'n at 14. The Court is not convinced by either. First, as Varghese points out, courts outside this Circuit have rejected agencies' prioritization arguments where the agency could not demonstrate the existence of a queue. See id. (citing Doe v. Risch, 398 F. Supp. 3d 647, 658 (N.D. Cal. 2019); Solis v. Cissna, No. 9:18-cv-83, 2019 WL 8219790, at *17 (D.S.C. July 11, 2019)). But a queue is evident here. Once an applicant's paperwork is documentarily complete, the "U.S. Embassy or Consulate General tells NVC what dates they are holding interviews, and NVC fills these appointments in a first-in, first-out manner." *Immigrant Visa Process, Step 9: Submit Documents*, U.S. Dep't of State, Bureau of Consular Affs., https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-8-scan-collected-documents/step-9-upload-and-submit-scanned-documents.html (last visited July 29, 2022). "First-in, first-out" is enough to establish a queue. Arab v. Blinken, —F. Supp. 3d—, 2022 WL 1184551, at *9 (D.D.C. Apr. 21, 2022). Second, while the government's "necessary responses" to the pandemic have imposed "significant burdens . . . on blameless applicants," precedent in this Circuit "recognizes no basis for reordering agency priorities when an agency is in a unique—and authoritative—position to allocate its resources in the optimal way." Id. (cleaned up).

The Court finds that factor four weighs in favor of the government.

12

### 3. TRAC *Factors Three and Five*

On the other hand, the third and fifth TRAC factors, which examine the consequences of delay, weigh in Varghese's favor. These two factors evaluate whether human health and welfare are at stake and if there are interests that would be prejudiced by the visa processing delay. See Ctr. for Sci., 74 F. Supp. 3d at 304; TRAC, 750 F.2d at 80. Here, the visa processing delays have caused Varghese and George to "endure a prolonged and indefinite separation," negatively impacting their health and welfare. Didban, 435 F. Supp. 3d at 177. Varghese cannot afford to visit George—after the only trip he made to India to visit her, he lost his job due to his travels. Varghese Decl. ¶¶ 9, 12. He also struggles to cover the expenses of two households in two countries, as George has quit her job and her PhD studies due to the uncertainty of the visa process. Id. ¶¶ 9, 13. Varghese experiences high blood pressure and feelings of sadness, which he attributes to the prolonged separation between him and his wife. Id. ¶¶ 10–11, 15. The delay has also interfered with their ability to start a family together. Id. ¶ 15. The Court "does not take lightly" the seriousness of their separation and the stress this uncertainty has caused. Bagherian, 442 F. Supp. 3d at 95; see Tate v. Pompeo, 513 F. Supp. 3d 132, 150 (D.D.C. 2021) ("Plaintiffs have been separated from friends, family, and loved ones, which has taken an emotional toll.").

In contending that factors three and five point in its direction, the government explains that the scheduling of visa interviews like George's has been "delayed further due to measures necessary to prevent the spread of COVID-19 and protect the safety of U.S. officials." Mot. Dismiss at 16. It also suggests that other noncitizens awaiting a visa "may have experienced the same or worse impacts from a delay" as Varghese and George have suffered. Id. at 15. The government's points may be true enough, but those considerations are accounted for in other parts of the analysis—either in other TRAC factors or as part of the Court's ultimate balancing.

13

See supra at 9–10 (considering COVID concerns as part of factor one's rule of reason); supra at 11–12 (evaluating whether plaintiff seeks to jump the line of similarly situated applicants under factor four).  The Court therefore agrees with Varghese, Opp'n at 15, that it is unnecessary to consider these arguments within the context of evaluating factors three and five.

        4.  *TRAC Factor Six*

Finally, since Varghese makes no allegations about the government's motives, id. at 18, the sixth factor does not apply, see Didban, 435 F. Supp. 3d at 177.

\* \* \*

On balance, the Court concludes that the TRAC factors weigh in favor of the government and Varghese failed to state a plausible claim of unreasonable delay at this time.  The Court recognizes the delay has not been easy for Varghese and George and encourages the government to act on the application as soon as reasonably possible.  However, especially in light of COVID-19's impact on agency resources, there is no basis for the Court to order the State Department to prioritize Ms. George's application.

## IV.  Conclusion

For the foregoing reasons, the Court will grant the government's motion to dismiss and deny the plaintiff's motion for summary judgment.  A separate Order shall accompany this memorandum opinion.

                                                              CHRISTOPHER R. COOPER
                                                              United States District Judge

Date:  July 29, 2022